

06/07/2002

CERTIFIED MAIL# 7002 0510 0002 1724 2438

From: Ronald R. Brice
P O Box 1146
Kimberling City, MO 65686

**Request For
Information Letter**
Freedom of Information Act 5 USC 552
and Privacy Act 5 USC 552a

To:
Commissioner Charles Rossotti
Commissioner of Internal Revenue Service
1111 Constitution Avenue, N.W.
Washington, D.C. 20224

NOTICE TO PRINCIPAL IS NOTICE TO AGENT
NOTICE TO AGENT IS NOTICE TO PRINCIPAL

May 21, 2002
Account Number: 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

Dear Commissioner of IRS Rossotti,

This letter is a request for information pursuant to Revenue Rulings 88-1 and 89-1. If this "request for information letter" is being addressed to the wrong place or party, please forward this "request for information letter" to the appropriate party or place. Please inform Requester in writing of any such forwarding and please also cite the specific authority of the person or office to which you have forwarded my letter to respond to the questions contained in it.

Also, the letter in the 1995 Form 1040 Instruction booklet, it was stated: "Providing information about our tax laws or your account status when you want it is another of our priorities." I trust, therefore, that providing direct and specific answers to the enclosed questions concerning the tax laws will be a high priority for your office.

*Please note:* I am not attempting, by writing this letter, citing the findings contained herein, or by asking the questions enclosed, to express or reflect personal opinion or frustration with the tax system. Nor does this letter in any way reflect my advocating the violation of or noncompliance with any internal revenue laws. I am not attempting, by writing this letter, to enter into a debate regarding the legality of 26 USC, the tax laws, the Constitution or any of its Amendments. I am not protesting any tax. I am simply requesting information via this letter pursuant to the above referenced Revenue Rulings, and pursuant to your stated priority to provide information to me concerning the tax laws.

Please do not respond to me with a letter stating that I have written some unspecified "type of letter" reflecting personal opinions or frustration with the tax system, unless you specifically cite which of my questions specifically reflects personal opinions or frustrations with the tax system.

Please also do not state that "it would be unfortunate if you were to rely on opinions of those who deliberately promote violation of the laws passed by Congress," since I do not rely on opinions, only on statutes, regulations and other government documents, and I most certainly do not rely on, nor do I wish to rely on, the opinions of anyone who deliberately promotes the violation of the laws passed by Congress. This letter contains technical questions concerning statutes, regulations and other government documents.

FOIA Rossotti
14 pages
Affidavit

1

In addition, I am requesting that you not respond to this request by merely citing 26 U.S.C.§ 7802 and § 7803, as I deal with those sections in this letter, and why they do not constitute a proper response to this "request for information."

I have been studying, reading and searching for several years to find, within Title 26 of the United States Code, the Internal Revenue Code, the section or sections which created your agency, the so called "Internal Revenue Service"; but I have been unable to find any such specific statutes or sections. I decided to research and locate whatever other sources of information I could find regarding how the entity which calls itself "Internal Revenue Service" was established; what my research has uncovered is strange and confusing. Here are some of the things, which I have found:

In 1972, an Internal Revenue Manual ("IRM") 1100 was published in both the Federal Register and the Cumulative Bulletin; see 37 Fed Reg. 20960, 1972-2 Cum. Bul. 836. On the very first page of this statement published in the Bulletin, the following admission was made. (I have emphasized the significant sections):

> "(3) By common parlance and understanding of the time, an office of the importance of the Office of Commissioner of Internal Revenue was a bureau. The Secretary of the Treasury in his report at the close of the calendar year 1862 stated that "The Bureau of Internal Revenue has been organized under the Act of the last session" Also <u>it can be seen that Congress had intended to establish a Bureau of Internal Revenue, or thought they had</u>, from the act of March 3, 1863, in which provision was made for the President to appoint with Senate confirmation a Deputy Commissioner of Internal Revenue "who shall be charged with such duties in the bureau of internal revenue as may be prescribed by the Secretary of the Treasury, or as may be required by law, and who shall act as Commissioner of internal revenue in the absence of that officer, and exercise the privilege of franking all letters and documents pertaining to the office of internal revenue." In other words, "the office of internal revenue" was "the bureau of internal revenue," and the act of July 1, 1862 is the organic act of today's Internal Revenue Service."

This statement, which appears again in a similar publication appearing at 39 Fed. Reg. 11572, 1974-1 Cum. Bul. 440, as well as the current IRM 1100, essentially admits that Congress never created either the Bureau of Internal Revenue, or the Internal Revenue Service. To conclude that "*it can be seen that Congress had intended to establish a Bureau of Internal Revenue, or <u>thought they had</u>"*

(see IRM 1111.2 - Organic Act) (Emphasis added) - is an admission that even the government itself cannot find anything whatsoever which actually created either agency. The only office created by the act of July 1, 1862, was the Office of the Commissioner of Internal Revenue (*not* the Commissioner of Internal Revenue Service); neither the Bureau of Internal Revenue, nor the "Internal Revenue Service" was created by any of these acts.

I have no doubt that, when the employees of the "Internal Revenue Service", and, perhaps others, were researching the origins of the so-called agency so that this statement could be included in the IRM 1100, these employees must have performed a very thorough and exhaustive investigation. I am sure that the position of the "Internal Revenue Service" regarding how the alleged "Internal Revenue Service" came into being is the best that could be written under these circumstances.

However, besides the problem that these acts simply did not create either the "Bureau of Internal Revenue" or the "Internal Revenue Service", there exists the fact that these acts were repealed by the adoption of the Revised Statutes of 1873. Therefore, it would appear that your "agency" has never actually been created by any act of Congress. This is obviously a serious flaw, and creates some valid and serious legal problems.

Furthermore, I have discovered the following: There was an entity known as the "Bureau of Internal Revenue" which was renamed "Internal Revenue Service", as revealed by Department of Treasury

FOIA Rossotti
14 pages
Affidavit

2

Order 150-06, dated July 9, 1953 (see below) and further, by Treasury Decision 6038, entitled "Change of Nomenclature". However, an examination of the General Records of the Department of the Treasury (Record Group 56) 1789-1990, 56.1, Administrative History, from the National Archives and Record Administration reveals that no agency/entity called "Bureau of Internal Revenue" is listed in the "Former administrative units of the Treasury Department". In addition, the National Archives and Record Administration states:

"The Tax Act of 1862 authorized a permanent internal revenue establishment, the Office of the Commissioner of Internal Revenue, which supervised a network of district collectors and assessors and other field agents, and <u>which was informally known as the Bureau of Internal Revenue. It was formally re-designated the IRS, 1953."</u>(Emphasis added.)

"Informally known" means that no such agency was ever statutorily created, and that an "informally known" nickname was renamed ("re-designated") "IRS" in 1953.

I have also found the following statement in the Federal Register, Volume 41, September 15th, 1976:

> "The term "Director, Alcohol, Tobacco and Firearms Division" has been replaced by the term "Internal Revenue Service."

What the above makes clear is that "Internal Revenue Service" is, at least in this case, simply another name - an alias or as the Federal Register clearly states, a "term" - for the term "Director, Alcohol, Tobacco and Firearms Division", which is itself (as stated) a *term*, and not an agency which Congress has ever created.

I have also located the following documents: 27 CFR § 201, which is entitled "Short title", is cited as the "Federal Alcohol Administration Act." In § 201, under HISTORY: ANCILLARY LAWS AND DIRECTIVES is found the following:

"Transfer of functions:

> Federal Alcohol Administration and offices of members and Administrator thereof were abolished and their functions directed to be administered under direction and supervision of Secretary of Treasury through <u>Bureau of Internal Revenue [now Internal Revenue Service]</u> in Department of Treasury, by Reorg. Plan No. 3 of 1940 which appears as 5 USCS § 903 note <u>The Department of the Treasury Order 221 of July 1, 1972, established the Bureau of Alcohol, Tobacco and Firearms and transferred to it the alcohol and functions of the Internal Revenue Service."</u> (Emphasis added.)

The last sentence is correctly quoted: <u>"the alcohol and functions"</u>. This last sentence of the above section clearly states that "the functions" of the Internal Revenue Service were "transferred" to the Bureau of Alcohol, Tobacco and Firearms when the BATF was established. The term used in this cite is "the functions", not "some of the functions", or "certain functions", or any other term, which would imply a limited transfer of specific, limited functions. The use of the all-inclusive term, "the functions, "thus implies that *all* functions of "IRS" were transferred to BATF upon BATF's establishment. If all of "the functions" of "IRS" were transferred to BATF upon BATF's establishment, then which specific "functions" does "IRS" handle at present, if any?

I have located the actual document which established the Bureau of Alcohol, Tobacco and Firearms, Treasury Order 120-01, (a renumbering of DOT Order 221) which is entitled "Establishment of the Bureau of Alcohol, Tobacco and Firearms". TO 120-01 cites various functions and provisions of law, which have been delegated to the BATF. In paragraph #2, section b, TO 120-01 states that Chapters 61 through 80, inclusive, of the Internal Revenue Code are delegated to BATF *"insofar as they relate to the activities administered and enforced with respect to Chapters 51, 52 and 53;"*

Chapters 61 through 80, also known as Subtitle F of the Code, contain all of the "Procedures and Administration" statutes for filing returns, assessment, collection, interest, penalties, crimes, other offenses and forfeitures, and liability and enforcement of tax. Some of the sections found in

Chapters 61 through 80 of Title 26, the Internal Revenue Code, sections that many people would recognize, are the following:

> § 6001 ("Notice or regulations requiring records, statements and special returns")
>
> § 6011 ("General requirement of return, statement or list")
>
> § 6012 ("Persons required to make returns of income" a, b and c are all cited in the "IRS" Form 1040 Instruction booklet as the government's authority to ask for information.)
>
> § 6321 ("Lien for taxes")
>
> § 6331 ("Levy and distraint")
>
> § 7201 ("Attempt to evade or defeat tax")
>
> § 7203 ("Willful failure to file return, supply information, or pay tax")
>
> § 7321 ("Authority to seize property subject to forfeiture") (For more on this section, and how it appears only relevant to BATF, see below.)

It is true that Chapters 51, 52 and 53 are entitled respectively "Distilled Spirits, Wines, and Beer", "Cigars, Cigarettes, Smokeless Tobacco, Pipe Tobacco, and Cigarette Papers and Tubes", and "Machine Guns, Destructive Devices, and Certain Other Firearms" -- i.e., Alcohol, Tobacco and Firearms - which would seem to limit the authority of BATF relevant to Subtitle F to alcohol, tobacco and firearms related "Procedures and Administration". However, I cannot find anywhere a statute or regulation or any other document, which delegates Chapters 61 through 80 of the Code to "Internal Revenue Service". And since "the functions" of "IRS" were transferred to BATF by DOT Order 221 upon BATF's creation in 1972, then it seems clear that all of the above-cited Procedures and Administration "functions" are under the jurisdiction of BATF alone.

Furthermore, I have found that the only Privacy Act Systems of Records ("SOR") which claims Chapters 61 through 80 of the Code as its authority to maintain records on anyone is Treasury/ATF .003, entitled "Criminal Investigation Report System - Treasury/ATF", which is maintained by BATF, not "IRS". SOR Treasury/ATF .003 covers such categories of individuals as:

> "(1) Criminal offenders or alleged criminal offenders acting alone or in concert with other individuals and suspects who have been or are under investigation for a violation or suspected violation of laws enforced by the Bureau." (2) Criminal offenders or alleged criminal offenders acting alone or in concert with individuals who have been referred to the Bureau of Alcohol, Tobacco and Firearms by other law enforcement agencies, governmental units and the general public. (3) Informants. (4) Persons who come to the attention of the Bureau in the conduct of criminal investigations"

"IRS" maintains no SOR whatsoever which specifically claims Chapters 61 through 80 of the Code as its authority for maintaining records, and which maintains such specific records on suspected, alleged or actual criminals. What seems to me to be true is that all crimes which are committed relevant to Chapters 61 through 80 of the Code appear to actually be a violation of BATF laws, and not "IRS" laws.

In addition, 27 CFR §§ 70.11 also states that Subtitle F is delegated to be enforced and administered by BATF, "as it relates to any of the foregoing."

The words "the foregoing" in 27 CFR §§ 70.11, which is a section entitled "Meaning of terms", refer to the following terms: Person; lien; levy; enforced collection; electronic fund transfer; Director (BATF); Commercial Bank; Chief, Tax Processing Center; Code of Federal Regulations; Bureau; ATF Officer. So 27 CFR §§ 70.11 is stating that BATF has been delegated the authority of Subtitle F as it relates to liens, levies, enforced collection (i.e., seizure and forfeiture) - activities which one

FOIA Rossotti
14 pages
Affidavit

4

generally associates with "IRS". Again, I can find no such delegation of authority to "IRS" which relates to such activities. This regulation further appears to make it clear that it is really BATF, which is liening, levying and seizing property, even when it appears that "IRS" is doing these things.

This is a significant conclusion: it appears that it is always BATF, which is masquerading as "IRS" when "IRS" is liening, levying and seizing property. This conclusion is further supported by 26 USC §§ 7321, which is the section of the Internal Revenue Code entitled "Authority to Seize Property Subject to Forfeiture". It states: *"Any property subject to forfeiture to the United States under any provision of this title may be seized by the Secretary."*

Then, in the implementing regulation, 26 CFR §§ 301.7321 - 1, entitled "Seizure of Property", is stated the following:

> "Any property subject to forfeiture to the United States under any provision of the Code may be seized by the district director or assistant regional commissioner (alcohol, tobacco and firearms). <u>Upon seizure of property by the district director he shall notify the assistant regional commissioner (alcohol, tobacco and firearms) for the region wherein the district is located who will take charge of the property and arrange for its disposal or retention under the provisions of law and regulations applicable thereto</u>." (Emphasis added.)

The above statute and regulation plainly reveals that <u>all property which is seized by IRS under any provision of Title 26</u>, whether it be by the district director or the assistant regional commissioner (alcohol, tobacco and firearms), <u>is then handed over to the assistant regional commissioner</u> (alcohol, tobacco and firearms), who "arrang(es) for its disposal and retention"

Why is *all* property seized by "IRS" - "under any provision of Title 26" (which would, of course, include Subtitle A, "Income Taxes" - much of it having to do with alleged violations of "income tax" laws, and ostensibly having nothing whatsoever to do with alcohol, tobacco or firearms taxes) seized by the district director, and then handed over to this mysterious assistant regional commissioner (alcohol, tobacco and firearms), who clearly appears to be either an official of the Bureau of Alcohol, Tobacco and Firearms, or perhaps an official relevant only to Chapters 51, 52 and 53 of the Internal Revenue Code? It could only be because somehow all of the laws in Chapters 61 through 80, including the seizure and forfeiture laws of the IRC, are relevant only to BATF taxes.

Also in TO 120-01 (dated 6/6/72) is a reference to the term "Director, Alcohol, Tobacco and Firearms Division" - the same term which was renamed "Internal Revenue Service" according to the Federal Register of 9/15/76 (see above.) TO 120-01 states:

> *"The terms "Director, Alcohol, Tobacco and Firearms Division" and "Commissioner of Internal Revenue" wherever used in regulations, rules, and instructions, and forms, issued or adopted for the administration and enforcement of the laws specified in paragraph 2 hereof, which are in effect or in use on the effective date of this Order, shall be held to mean the Director"*

> *"The terms "internal revenue officer" and "officer, employee or agent of the internal revenue" wherever used in such regulations, rules, instructions and forms, in any law specified in paragraph 2 above, and in 18 U.S.C. 1114, shall include all officers and employees of the United States engaged in the administration and enforcement of the laws administered by the Bureau, who are appointed or employed by, or pursuant to the authority of, or who are subject to the directions, instructions or orders of, the Secretary."*

The above statements - aside from being extremely circular and difficult to follow - appear to be revealing that the official known as the Commissioner of Internal Revenue is actually the same person and office as the Director, Alcohol, Tobacco and Firearms Division (who was renamed

FOIA Rossotti
14 pages
Affidavit

5

"Internal Revenue Service" according to the Federal Register, Volume 41, Wednesday, September 15, 1976) and that the officials known as "internal revenue officer" and "officer, employee or agent of the internal revenue" are actually enforcing BATF laws. For further exploration of this, see the definition of "Revenue Agent" below.

TO 120-01 goes on to state:

> "There shall be transferred to the Bureau all positions, personnel, records, property, and unexpended balances of appropriations, allocations, and other funds of the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service, including those of the Assistant Regional Commissioners (Alcohol, Tobacco and Firearms), Internal Revenue Service."

Commissioner Rossotti - the Assistant Regional Commissioner (Alcohol, Tobacco and Firearms) is apparently the same official named in 26 CFR §§ 301.7321-1, who "takes charge" of all property seized by "IRS" and "arranges for its disposal."

What is even more bizarre is this: after all the property seized by "IRS" is handed over by the district director to this mysterious assistant regional commissioner (alcohol, tobacco and firearms), the remission or mitigation of forfeitures relevant to the Internal Revenue Code (Title 26) and its regulations (26 CFR) is governed by the customs laws which are applicable to remission or mitigation of penalties as contained in Title 19 USC - Customs - Sections 1613 and 1618. Sections 1613 and 1618 of Title 19 fall under Chapter 4, which is relevant to the enforcement of the provisions of the Tariff Act of 1930. Why are sections of the customs laws, which govern the enforcement of the Tariff Act of 1930, the only laws which are cited to be used to remit or mitigate forfeitures of property, which has been seized by "IRS" and then handed over to a BATF official? More simply: If my property were seized by "IRS", why would I be forced to use Customs laws to attempt to get it back?

Returning to the above cite from 27 CFR §§ 201, concerning the Federal Alcohol Administration, it is obvious that some entity with the present name "Internal Revenue Service" used to be known as the "Bureau of Internal Revenue." And I find that renaming confirmed in Treasury Order 150-06, dated July 9, 1953, entitled "Designation as Internal Revenue Service," which states in paragraph #1:

> "The Bureau of Internal Revenue shall hereafter be known as the Internal Revenue Service."

So, where did this "Bureau of Internal Revenue" which was then renamed "Internal Revenue Service" originate? The only place I can find any reference whatsoever to the creation of a "Bureau of Internal Revenue" is in Article I of the Philippine Commission Act, Act No. 1189, dated 1904, which states in Section 2:

> "There shall be established a Bureau of Internal Revenue, the chief officer of which shall be known as the Collector of Internal Revenue. He shall be appointed by the Civil Governor, with advice and consent of the Philippine Commission, and shall receive a salary at the rate of eight thousand pesos per annum.

> "The Bureau of Internal Revenue shall belong to the Department of Finance and Justice."

Does this mean that the Bureau of Internal Revenue established in the Philippines in 1904 is the same Bureau of Internal Revenue, which was renamed "Internal Revenue Service" in Treasury Order 150-06? And, if not, what is the statutory origin of the Bureau of Internal Revenue, which is cited in TO 150-06? And since the Bureau of Internal Revenue established in the Philippines in 1904 belonged at that time to the Department of Finance and Justice, if it is the Bureau of Internal Revenue, which was renamed "Internal Revenue Service" and is now found in the Department of the Treasury, how was it transferred from the former department to the latter, and when?

In addition, I have looked in 31 U.S.C., Chapter 3, at the list of organizations of the Department of the Treasury; only to find that there is no "Internal Revenue Service" listed there an organization of

FOIA Rossotti
14 pages
Affidavit

6

the Department of the Treasury. Further, research reveals that there is no "Internal Revenue Service" listed as an agency, or even a term, within any of the organizations listed in Chapter 3.

Also in 31 U.S.C., in Section 1321, the list of Trust Funds maintained by the Treasury, I have found the following: Section 1321(2) and 1321(62) are named respectively as follows:

> "(2) Philippine special fund (internal revenue).
> (62) Puerto Rico special fund (Internal Revenue)."

Again, I find a reference to the Philippines (and Puerto Rico - see below, 27 CFR § 250.11), with the words "internal revenue" (and "Internal Revenue") used to define the Philippines and Puerto Rico respectively. And the spelling and capitalization of the two terms is the only thing which indicates which is the Philippine and which the Puerto Rico special fund.

In reference to Puerto Rico, and further questions concerning this issue, I have found in 27 CFR § 250.11 that the definition of "Revenue Agent" is given as:

> "Any duly authorized Commonwealth Internal Revenue Agent of the Department of the Treasury of Puerto Rico."

There, the definition of "Secretary" is given as:

> "The Secretary of the Department of the Treasury of Puerto Rico."

And there, the definition of "Secretary or his delegate" is given as:

> "The Secretary or any officer or employee of the Department of the Treasury of Puerto Rico duly authorized by the Secretary to perform the function mentioned or described in this part."

So, there apparently exists another "Department of the Treasury" - in Puerto Rico. Its official name is "The Department of the Treasury of Puerto Rico", and it has a Secretary, delegates of its Secretary, and Revenue Agents.

Does this mean that the "Internal Revenue Service" is found somewhere in the Department of the Treasury of Puerto Rico, since it isn't found in the list of organizations in the Department of the Treasury in Title 31, United States Code, or within any of those listed organizations? Not only that, but since the only definition of "Revenue Agent" which I can find is that found in 27 CFR § 250.11, does this mean that all "IRS" Revenue Agents actually work for the Department of the Treasury of Puerto Rico?

I have found other statutes and regulations, which are confusing to me: at 48 USC § 1402 I find the following:

> "Title III of the National Prohibition Act, as amended and all provisions of the internal revenue laws relating to the enforcement thereof, are hereby extended to and made applicable to [Puerto Rico and] the Virgin Islands"

I find still further, in the same section, under HISTORY; ANCILLARY LAWS AND DIRECTIVES:

> "Title III of the National Prohibition Act", referred to in this section, is Act Oct. 28, 1919, ch 85, Title III, 41 Stat. 319, which was generally classified to 27 USC § 71 et seq. prior to supersedure by the Internal Revenue Code of 1939, and subsequently by the Internal Revenue Code of 1954."

The previous statement says to me that Title III of the National Prohibition Act was classified through several stages to the Internal Revenue Code (Title 26 of the United States Codes). That conclusion is supported and confirmed by the following, found in the same section:

> "The internal revenue laws", referred to in this section, are located generally at 26 USCS § 1 et seq."

The Lawyers" Cooperative Publishing version (1995) words the preceding section slightly differently:

FOIA Rossotti
14 pages
Affidavit

7

> *"The internal revenue laws", referred to in this section, appear generally <u>as</u> 26 USCS § 1 et seq." (Emphasis added.)*

Commissioner Rossotti, as you know, 26 USCS is the Internal Revenue Code, and "§ 1 et seq." means: "Section 1 and all which follows it" - i.e., the entire Code from start to finish.

In other words, this cite from Title 48 (§ 1402) plainly states that the entire Internal Revenue Code, from start to finish, is "generally" made up of "internal revenue laws" which are relevant to the enforcement of Title III of the National Prohibition Act, which is presently located in Puerto Rico and the Virgin Islands. In fact, the Lawyers" Cooperative Publishing version of 48 USC § 1402 literally says that 26 USCS - the entire Code - is <u>only</u> the "internal revenue laws" relevant to the enforcement of Title III of the National Prohibition Act, since it makes the statement: *"The "internal revenue laws" referred to in this section appear generally <u>as</u> 26 USCS § 1 et seq."*

This is truly strange. Obviously, when I read the above statute, I must ask this question:

> *Which internal revenue laws "generally located at (or "which appear generally as") 26 USCS § 1 et seq." - the Internal Revenue Code - are relevant to anything other than or in addition to the enforcement of Title III of the National Prohibition Act?*

In addition, Internal Revenue Manual (IRM) 30(55)4.2 at (29) - dated 1-1-90 - reveals the following: "VIRGIN IS (TC 150)". "TC" stands for "Transaction Code", and "VIRGIN IS" stands for "Virgin Islands." As you know, a Transaction Code (TC) 150 transcript (Individual Master File, abbreviated IMF) is the computer transcript to which data is input either when someone files a Form 1040, or a Substitute For Return (SFR) is filed by "IRS." Thus Form 1040 data is input on a Virgin Islands transcript, indicating a liability, payment, or other action relevant to a Virgin Islands liability. 48 U.S.C. § 1402 states that Title III of the National Prohibition Act, and all provisions of the internal revenue laws relating to the enforcement thereof, have been extended to and made applicable to [Puerto Rico and] the Virgin Islands. The same section then goes on, as you recall, to state that Title III of the National Prohibition Act was reclassified to 27 U.S.C. § 71 et seq., and then to the Internal Revenue Code of 1939, and subsequently the Internal Revenue Code of 1954. The section further states that the "internal revenue laws" relevant to the enforcement of Title III of the National Prohibition Act *"are located generally at 26 USCS § 1 et seq."*

What I surmise from the above is that Title III of the National Prohibition Act was moved to [Puerto Rico and] the Virgin Islands, and that the "internal revenue laws" relevant to its enforcement are "located generally" throughout the Internal Revenue Code, which means that they are internal revenue laws relevant, it appears, to Puerto Rico and the Virgin Islands. I believe this is why the TC 150, which indicates a Virgin Islands transcript, is posted to the IMF whenever a Form 1040 or SFR is filed. <u>I believe this indicates that the Form 1040 is actually a Virgin Islands return, and that I would be committing perjury if I were to file Form 1040, since I am not liable for filing a Virgin Islands return.</u>

In fact, in <u>Mills v. United States</u>, CIV-94-114-TUC-JMR, Fred D. Mills had caused to be filed a Freedom of Information Act (FOIA) request to the Cheyenne District Office of Internal Revenue Service requesting a copy of all documents maintained that indicated that "TC 150 means other than and/or in addition to the Virgin Islands." The Internal Revenue Service could produce no documents, which demonstrated that TC 150 is connected in the geographical sense to other than the Virgin Islands. IRM 30(55)(4.2) at (29), [now 30(55)(4.2) at (30)] (which states, "VIRGIN IS (TC 150)"), was held by the Internal Revenue Service to be the only document relevant to venue for TC 150. Loretta C. Argrett, Assistant Attorney General, Tax Division, stated in a letter dated January 9, 1995: "no responsive documents exist" which would provide otherwise.

Perhaps this connection between the Virgin Islands and Title III of the National Prohibition Act is why

the assistant regional commissioner (alcohol, tobacco and firearms) ends up with all the property seized by "IRS" under any provision of Title 26 - which itself appears to be the collection of "internal revenue laws" relevant to the enforcement of Title III of the National Prohibition Act, an Act which it seems to us that the Bureau of Alcohol, Tobacco and Firearms, not "IRS", would be responsible for enforcing.

In addition, I have uncovered the following: Form 1040 is entitled "U.S. Individual Income Tax Return", which would indicate that it is a form to be filed by a "U.S. Individual." 26 CFR §§ 1.6017-1(a)(1), dealing with "Self-Employment tax returns", states the following:

> "an individual who is a resident of the Virgin Islands, Puerto Rico, or (for any taxable year beginning after 1960) Guam or American Samoa is not to be considered a nonresident alien individual."

26 CFR § 1.6017-1(a)(2) states:

> "Except as otherwise provided in this subparagraph, the return required by this section shall be made on Form 1040. The form to be used by residents of the Virgin Islands, Guam, or American Samoa is Form 1040SS"

Internal Revenue Publication 676 states that Form 1040 SS is a "Self-Employment Tax Return." But the above section states that the return required "under this section shall be made on Form 1040." It would appear, therefore, that an "individual" is actually a resident of the Virgin Islands (or Puerto Rico, or, before 1960, Guam or American Samoa). Perhaps that is why the TC 150, indicating that a Virgin Islands return has been filed, is posted to the Virgin Islands transcript IMF when a Form 1040 or SFR are filed.

So far, my research has brought me to the following conclusions:

1. The only "Internal Revenue Service" I can find is not an agency at all, but simply an alias (term replacement) for the term "Director, Alcohol, Tobacco and Firearms Division," or else the renaming of an entity called "Bureau of Internal Revenue", which appears to have its origins in the Philippines in 1904.

2. There was never any "Bureau of Internal Revenue" statutorily created by Congress. The term "Bureau of Internal Revenue" was an "informal" nickname, not the name of a statutory agency or entity. Therefore, the renaming of "Bureau of Internal Revenue" as "Internal Revenue Service" is essentially the renaming of a non- statutory nickname.

3. "Internal Revenue Service" is not listed as an organization of the Department of the Treasury in Title 31, but that there does exist in statute another "Department of the Treasury" - the Department of the Treasury of Puerto Rico - which has a "Secretary", and the Secretary's "delegate(s)" and "Revenue Agent(s)", and perhaps an "Internal Revenue Service" although I have yet to locate such "agency" or "term" therein.

4. "Internal Revenue" refers to the Puerto Rico special fund, and "internal revenue" refers to the Philippine special fund. Both of these appear to be trust funds maintained by the Department of the Treasury of the United States - not the Department of the Treasury of Puerto Rico - and it is only their respective spellings, which make them completely different from each other.

5. The internal revenue laws relevant to the enforcement of Title III of the National Prohibition Act are "generally located at 26 USCS § 1 et seq." or "appear generally as 26 USCS § 1 et seq.", in other words, throughout (or as) the entire Internal Revenue Code, and I have no way of knowing which internal revenue laws in the Code are relevant to anything other than and/or in addition to Title III of the National Prohibition Act. Just the fact that many, or perhaps all, of the "internal revenue laws" in Title 26 are clearly laws relevant to the enforcing of Title III of the National Prohibition Act makes me wonder what relevance the internal revenue laws contained in the Internal Revenue Code have to do with me. And how am I to tell which of those laws are relevant to me - if any?

6. All of the laws contained in Title 26, the Internal Revenue Code, Chapters 61 through 80, are relevant only to BATF, and not "IRS".
7. All property seized by IRS "under any provision of the Code" (Title 26) is then handed over to an official whose job title clearly defines him as dealing with alcohol and tobacco taxes. Why is property allegedly related to "income tax" violations first seized by "IRS", and then handed over to the assistant regional commissioner (alcohol, tobacco and firearms)?
8. The laws governing the remission and mitigation of all of the property seized and forfeited under the provisions of Title 26 are customs laws relevant to the enforcement of the provisions of the Tariff Act of 1930. Why does one have to use customs laws to get back property seized by "IRS"?
9. When one files a Form 1040, a Transaction Code 150, indicating a Virgin Islands return, is posted to the IMF, which IRS has confirmed is a TC 150 transcript, and which the IRM indicates is a Virgin Islands transcript.

Relevant to the creation of and existence of an agency or office, at the state level, it is a well-acknowledged and accepted rule that a duly constituted office of the state government must be created either by the state constitution itself, or else by some specific legislative act; see the following: (All emphasis added).

Patton v. Bd. Of Health, 127 Cal. 388, 393, 59 P. 702, 704 (1899) - *"One of the requisites is that the office must be created by the constitution of the state or it must be authorized by some statute."*

First Nat. Bank of Columbus v. State, 80 Neb. 597, 114 N.W. 772, 773 (1908); State ex rel. Peyton v. Cunningham, 39 Mont. 197, 103 P. 497, 498 (1909); State ex rel. Stage v. Mackie, 82 Conn. 398, 74 A. 759, 761 (1909); State ex rel. Key v. Bond, 94 W.Va. 255, 118 S.E. 276, 279 (1923) - *"a position is a public office when it is created by law";*

Coyne v. State, 22 Ohio App. 462, 153 N.E. 876, 877 (1926) - *"Unless the office existed there could be no officer either de facto or de jure. A de facto officer is one invested with an office; but if there is no office with which to invest one, there can be no officer. An office may exist only by duly constituted law".*

State v. Quinn, 35 N.M. 62, 290 P. 786, 787 (1930); Turner v. State, 226 Ala. 269, 146 So. 601, 602 (1933); Oklahoma City v. Century Indemnity Co., 178 Okl. 212, 62 P.2d 94, 97 (1936); State ex. rel. Nagle v. Kelsey, 102 Mont. 8, 55 P. 2d 685, 689 (1936); Stapleton v. Frohmiller, 53 Ariz. 11, 85 P.2d 49, 51 (1938); Buchholtz v. Hill, 178 Md. 280, 13 A.2d 348, 350 (1940); Krawiec v. Industrial Comm., 372 Ill. 560, 25 N.E.2d 27, 29 (1940); People v. Rapsey, 16 Cal.2d 636, 107 P.2d 388, 391 (1940); Industrial Comm. v. Arizona State Highway Comm., 61 Ariz. 59, 145 P.2d 846, 849 (1943); State ex rel. Brown v. Blew, 20 Wash.2d 47, 145 P.2d 554, 556 (1944); Martin v. Smith, 239 Wis. 314, 1 N.W.2d 163, 172 (1941); Taylor v. Commonwealth, 305 Ky. 75, 202 S.W.2d 992, 994 (1947); State ex rel. Hamblen v. Yelle, 29 Wash.2d 68, 185 P.2d 723, 728 (1947); Morris v. Peters, 203 Ga. 350, 46 S.E.2d 729, 733 (1948); Weaver v. North Bergen Tp., 10 N.J. Super. 96, 76 A.2d 701 (1950); Tomaris v. State, 71 Ariz. 147, 224 P.2d 209, 211 (1950); Pollack v. Montoya, 55 N.W. 390, 234 P.2d 336, 338 (1951); Schaeffer v. Superior Court in & for Santa Barbara County, 248 P.2d 450, 453 (Cal.App. 1952); Brusnigham v. State, 86 Ga.App. 340, 71 S.E.2d 698, 703 (1952); State ex rel. Mathews v. Murray, 258 P.2d 982, 984 (Nev. 1953); Dosker v. Andrus, 342. Mich. 548, 70 N.W.2d 765, 767 (1955); Hetrich v. County Comm. of Anne Arundel County, 222 Md. 304, 159 A.2d 642, 643 (1960); Meiland v. Cody, 359 Mich. 78, 101 N.W.2d 336, 341 (1960); Jones v. Mills, 216, Ga. 616, 118 S.E.2d 484, 485 (1961); State v. Hord, 264 N.C. 149, 141 S.E.2d 241, 245 (1965); Planning Bd. Of Tp. of West Milford v. Tp. Council of Tp. of West Milford, 123 N.J. Super. 135, 301 A.2d 781, 784 (1973); Vander Linden v. Crews, 205, N.W.2d 686, 688 (Iowa 1973); Kirk v. Flournoy, 36 Cal.App. 3d 553, 111 Cal. Rptr. 674, 675 (1974); Wargo v. Industrial Comm., 58 Ill.2d 234, 317 N.E.2d 519, 521 (1974); State v. Bailey, 220 S.E.2d 432, 435 (W.Va. 1975); Leek v. Theis, 217 Kan. 784, 539 P.2d 304, 323 (1975); Midwest Television, Inc. v. Champaign-Urbana Communications,

Inc., 37 Ill.App.3d 926, 347 N.E.2d 34, 38 (1976); and State v. Pickney, 276 N.W.2d 433, 436 (Iowa 1979).

This same rule applies at the federal level; see United States v. Germaine, 99 U.S. 508 (1879); Norton v. Shelby County, 118 U.S. 425, 441, 6 S.Ct. 1121 (1886) - *"there can be no officer, either de jure or de facto, if there be no office to fill"*; United States v. Mouat, 124 U.S. 303, 8 S.Ct. 505 (1888); United States v. Smith, 124 U.S. 525, 8 S.Ct. 595 (1888); Glavey v. United States, 182 U.S. 595, 607, 21 S.Ct. 891 (1901) - *"The law creates the office, prescribes its duties"*; Cochnower v. United States, 248 U.S. 405, 407, 39 S.Ct. 137 (1919) - *"Primarily we may say that the creation of offices and the assignment of their compensation is a legislative function... And we think the delegation of such function and the extent of its delegation must have clear expression or implication"*; Burnap v. United States, 252 U.S. 512, 516, 40 S.Ct. 374, 376 (1920); Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 173 (1926); N.L.R.B. v. Coca-Cola Bottling Co. of Louisville, 350 U.S. 264, 269, 76 S.Ct. 383 (1956) - *""Officers" normally means those who hold defined offices. It does not mean the boys in the back room or other agencies of invisible government, whether in politics or in the trade-union movement"*; Crowley v. Southern Ry. Co., 139 F. 851, 853 (5th Cir. 1905); Adams v. Murphy, 165 F. 304 (8th Cir. 1908); Sully v. United States, 193 F. 185, 187 (D.Nev. 1910) - *"There can be no offices of the United States, strictly speaking, except those which are created by the Constitution itself, or by an act of Congress"*; Commissioner v. Harlan, 80 F.2d 660, 662 (9th Cir. 1935); Varden v. Ridings, 20 F.Supp. 495 (E.D.Ky. 1937); Annoni v. Blas Nadal"s Heirs, 94 F.2d 513, 515 (1st Cir. 1938); and Pope v. Commissioner, 138 F.2d 1006, 1009 (6th Cir. 1943).

In addition to the above-cited cases, I am including selected paragraphs from a letter authored by Congressman Pat Danner, 6th District, Missouri, to Bill Petterson, Route 2, Box 37, Trenton, Missouri, 64683-9610. It is apparent from Congressman Danner's letter that Mr. Petterson has contacted him about this question of the establishment of an agency known as "Internal Revenue Service". The selected paragraphs from Congressman Danner letter is enclosed herein and states, in unnumbered paragraph #2:

> *"You are quite correct when you state that an organization with the actual name "Internal Revenue Service" was not established by law."*

That statement appears to me to be fairly clear and conclusive. Congressman Danner then goes on, in the same paragraph, to state:

> *"Instead, in 1862, Congress approved 26 U.S.C. 7802. This statute established the office of "Commissioner of Internal Revenue." As the act states, "The Commissioner of Internal Revenue shall have such duties and powers as may be prescribed by the Secretary of the Treasury." In modern times, these duties and powers flow to the Commissioner who implements appropriate policy through the IRS.*
>
> *"In addition to Section 7802, Section 7803 authorizes the Secretary of Treasury to employ such number of persons deemed proper for the administration and enforcement of the internal revenue laws. It is these employees who comprise the IRS."*

There are several problems with Congressman Danner's previous statement. These are as follows:

> Congress did not "approve" 26 USC §§ 7802 in 1862. In reference to this question, it has been stated:

"[The Act of June 30, 1926, 44 Stat. 777, Ch. 712], which created the 50 titles of the United States Code is still in effect and is the foundation for the current design of the United States Code. The act did not repeal any prior laws or attempt to replace them. The titles and code sections contained therein were only made prima facie evidence of the laws of the United States. Their use was

suitable in court, but they could be impeached by showing what the underlying statutes were and that the code sections were different from the statutes; in such event, the statutes controlled. This condition prevails today for those titles which are not positive law, and the same titles, or any particular section thereof, can be impeached by showing a difference between the title or code section and the underlying or supporting statutes; see Preston v. Heckler, 734 F.2d 1359, 1367 (9th Cir. 1983); and Rasquin v. Muccini, 72 F.2d 688 (2nd Cir. 1934)."

The "approval" to which Congressman Danner is referring is the 1862 Act referenced in IRM 1111.2 in which Congress "thought it had" established a Bureau of Internal Revenue, and which clearly states that:

> "by common parlance and understanding of the time, an office of the importance of the Office of Commissioner of Internal Revenue was a bureau", and further, "that Congress had intended to establish a Bureau of Internal Revenue, <u>or thought they had</u>, from the act of March 3, 1862" (Emphasis added).

Furthermore, in the same IRM 1111.2 is stated the opinion: "in other words, "the office of internal revenue" was "the bureau of internal revenue," and the act of July 1, 1862 is the organic act of today's Internal Revenue Service." Obviously the word "organic", which the dictionary defines variously as: "of, or pertaining to, or affecting, an organ of the body," and (law): "designating or pertaining to the fundamental or constitutional laws and precepts of a government or organization", in this context represents a description by whoever wrote this passage for IRM 1111.2 (entitled "Organic Act") of the alleged informal process by which the term "Internal Revenue Service" has grown - organically - into today's common parlance. However, neither informal organic growth, nor an "Organic Act" is enough to establish the statutory foundation of a federal government agency. IRM 1111.2 does not, however, state either that 26 U.S.C.§ 7802 was approved by Congress in 1862, or that there was an official establishment of either a bureau or an agency. And again, the only Bureau of Internal Revenue, which I can find that was established by Congress is the Philippine Bureau of Internal Revenue, described above. And the National Archives lists no "Bureau of Internal Revenue" in its list of "Former administrative units of the Treasury Department", and further states that the "Bureau of Internal Revenue" was an "informal" name which was "formally re-designated the IRS, 1953."

1. 26 U.S.C.§ 7803 authorizes the employment of persons, who, Congressman Danner states, "comprise the IRS". Such authorization of employment of persons still does not constitute the statutory establishment of an agency known as "Internal Revenue Service". In fact, in 26 U.S.C.§ 7802(b)(1), entitled "Establishment of office" is referenced an "Office of Employee Plans and Exempt Organizations", which is "within the Internal Revenue Service" - but the establishment of the "Internal Revenue Service" itself is never cited. The term "Internal Revenue Service" just sort of pops out of nowhere, as if it already existed as an entity. If the statute authorizing the "Establishment of [an] Office of Employee Plans and Exempt Organizations" can be found - "within the Internal Revenue Service" - then why cannot someone produce the statute, which created the establishment of the "Internal Revenue Service" itself? Since your Appointment Affidavit (see #3 below) states that you're the "Commissioner of IRS" - i.e., Commissioner of Internal Revenue Service - one would naturally believe that you are the primary person who should be able to lead us to this (so-far) elusive statute. Which "IRS" are you the Commissioner of?

2. § 7803 and Congressman Danner's letter both reference the "internal revenue laws." But 48 U.S.C. § 1402 states that the "internal revenue laws" generally found at (or "as") 26 U.S.C.§ 1 et seq., the Internal Revenue Code, are relevant to the enforcement of Title III of the National Prohibition Act. If it is these same laws that "IRS" employees are administering, then I don't see how those laws are relevant to me, or, if some of them are - which ones?

3.  Both Treasury Order 150-25 (March 8, 1951), and Internal Revenue Manual Delegation Order No. 4 clearly reveal the existence of two Commissioners, each with different delegated authority: a <u>Commissioner of Internal Revenue</u> (as cited in 26 U.S.C. § 7802, and the 1862 Act) and a <u>Commissioner of Internal Revenue *Service*</u>. As I stated above, your Appointment Affidavit clearly shows that you are the "Commissioner of IRS" - i.e., the "Commissioner of <u>Internal Revenue Service</u>." It is apparent that these two Commissioners each have different delegated authority, and that the Commissioner of Internal Revenue, referred to in IRM 1111.2 and in Congressman Danner's letter, is not you, nor your office.

Since, I have reached the conclusion that an agency known as "Internal Revenue Service" has never been actually created by Congress, I am hereby requesting that you provide to me the citation of any statute(s) which really did create the/an "Internal Revenue Service" (other than the "Internal Revenue Service" referenced in the Federal Register, which is admittedly only a term replacing another term, and clearly not an agency) and the "Internal Revenue Service" which is the name replacing the "Bureau of Internal Revenue", which bureau appears to have been established in the Philippines in 1904. If the Bureau of Internal Revenue from the Philippine Commission of 1904 is the same Bureau of Internal Revenue which was renamed "Internal Revenue Service" in 1953, then please provide documents clarifying that fact, and please then explain to us how a Philippine Bureau of Internal Revenue, alias (renamed) "Internal Revenue Service", is relevant to a Citizen of the United States of America.

Since your Web page makes the public pronouncement that the "tax collection agency" of which you are the head was "created" in 1862, certainly you, as the head of this alleged agency, which posted this public pronouncement to your Web page, should be easily and immediately able to produce the documents, which support your pronouncement. If you cannot, then you are disseminating incorrect and misleading information through your Web site. Relevant to my needing documentation to support pronouncements by the government: please be advised of the following:

> *"No constitutional right exists under the Ninth Amendment, or to any other provision of the Constitution of the United States, "to trust the Federal Government and to rely on the integrity of its pronouncements.""* <u>MAPCO, Inc. v Carter</u> *(1978, Em Ct App)573 F2d 1268, cert den 437 us 904, 57 L Ed 2d 1134, 98 S Ct 3090.*

<u>Please do not respond to the above request by citing 26 U.S.C.§7802 or 26 U.S.C.§7803.</u> As I have stated, 26 U.S.C.§7802 merely authorizes the establishment of the Commissioner of Internal Revenue (not the Commissioner of IRS) and does not reveal the establishment of either a "Bureau of Internal Revenue" or of an agency known as "Internal Revenue Service." 26 U.S.C.§7803 authorizes the employment of "such persons as the Secretary [of the Treasury] deems proper for the administration and enforcement of the internal revenue laws" but certainly does not reveal the establishment of an agency called "Internal Revenue Service." 26 U.S.C.§7802 and §7803 also raise these questions:

1.  Is the "Secretary" referred to in 26 U.S.C.§7803 the Secretary of the Treasury of the United States of America, or the Secretary of the Treasury of the Department of the Treasury of Puerto Rico, and what statutes or other documents clarify this?

2.  Are the "internal revenue laws" referred to in 26 U.S.C.§7803 the same "internal revenue laws" which are relevant to the enforcement of Title III of the National Prohibition Act? If they are not, then what statutes or other documents clarify this?

I am also requesting that you inform me where in the Department of the Treasury (of the United States, not of Puerto Rico) "Internal Revenue Service" is located and listed as an agency, and

FOIA Rossotti
14 pages
Affidavit                                                                                       13

provide me with the statutes to verify its establishment and location therein.

Finally, I am also asking you to provide me with a clear and statutorily supported statement which clarifies exactly which internal revenue laws "generally located" in the entire Internal Revenue Code are relevant to anything other than and/or in addition to the enforcement of Title III of the National Prohibition Act (which was moved to the Virgin Islands and Puerto Rico) and an explanation of why all seized property is handed over to the assistant regional commissioner (alcohol, tobacco and firearms). I also need to know why the Transaction Code 150, designating Virgin Islands, is posted to the IMF whenever a Form 1040 is filed, or a SFR is filed by IRS.

Since this letter contains questions of profound personal and national importance, I am requesting that you provide me with the requested answers as soon as possible, or within the amount of time allotted for an information letter pursuant to the instant Revenue Rulings. Failing a response within that time period, I shall conclude that you can find no such statute(s) responsive to my request, nor responses to my other questions, and I shall act accordingly. Thank you for your attention to this matter.

Sincerely,

*[signature]*

, Requester

Notice is hereby given that, THIS DOCUMENT MUST BE FILED AS A PERMANENT PART OF THE MASTER FILE, ADMINISTRATIVE RECORD, AUTOMATED INFORMATION MANAGEMENT SYSTEM OF RECORDS AND/OR ANY OTHER RECORD SYSTEM AND/OR FILES MAINTAINED BY THE INTERNAL REVENUE SERVICE ON THE REFERENCED REQUESTER AND ACCOUNT NUMBER. IF SUCH RECORDS HAVE BEEN SUBSTITUTED OR DELETED THIS DEMAND STILL APPLIES.

# AFFIDAVIT

State of _Missouri_ )
County of _Stone_ ) SS
)

I, Ronald Brice, hereinafter Affiant, do state by first hand knowledge under penalty of perjury under the laws of the united States of America, that this Affiant is requesting information under the Freedom Of Information Act pursuant to Affiant's account number 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.

Further Affiant sayeth nought.

_Ronald Brice_
(Signature of Affiant)

## Notary Statement

State of _Missouri_ )
County of _Stone_ ) SS
)

On the _6_ of _June_, 2002 AD before me, appeared _Ronald Brice_

personally known to me, or presented satisfactory evidence to be the party whose name is sworn and subscribed to the above instrument. Witness my hand and seal.

Notary Signature: _Phyllis J. Oles_

My Commission Expires _6/17/03_

PHYLLIS J. OLES    Notary Public
Stone County    State of Missouri
My Commission Expires June 17, 2003